IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 23-cv-0116-WJM-SBP

SEBO AMERICA, LLC,

    Plaintiff,

v.

RED VACUUMS LLC,

    Defendant.

---

**ORDER GRANTING MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION**

---

This matter is before the Court on Defendant Red Vacuums LLC's ("Defendant") Motion to Dismiss for Lack of Personal Jurisdiction ("Motion"). (ECF No. 17.) Plaintiff SEBO America LLC ("Plaintiff") filed a response (ECF No. 21), and Defendant filed a reply (ECF No. 22). For the following reasons, the Motion is granted.

### I. BACKGROUND[1]

Plaintiff is a Colorado limited liability company that is the exclusive licensee of certain registered trademarks for floor maintenance equipment, notably vacuums and associated products. (¶¶ 3, 14.) Defendant is a Virginia limited liability company, whose sole member is a natural person and resident of Virginia. (¶ 15; ECF No. 17 ¶ 3.) Defendant accepted seven orders to ship goods allegedly infringing on Plaintiff's trademarks to customers in Colorado via its website redvacuums.com. (¶15; ECF No.

---

[1] Citations to (¶ __), without more, are references to the Amended Complaint. (ECF No. 16.). The Court assumes these facts as true only for the purposes of this Order.

17-1 at 1; ECF No. 17-2 at 1–9.)  Five of those orders were placed by Plaintiff's counsel shortly before filing this action.  (ECF No. 17 at 9–11; ECF No. 21 at 11.)  Those orders were cancelled and refunded before being shipped.  (*See generally* ECF Nos. 17-1, 17-2.)  Defendant concedes the other order was shipped to a customer in Longmont, Colorado, in 2020.  (ECF No. 17 at 11.)

## II. LEGAL STANDARD

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) is to determine whether the Court has personal jurisdiction over a defendant. The plaintiff bears the burden of establishing personal jurisdiction and may satisfy this burden by making a prima facie showing that personal jurisdiction over the defendants obtains*.  Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).  "In the preliminary stages of the litigation, however, the plaintiff's burden is light." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).  If the presence or absence of personal jurisdiction can be established by reference to the complaint, the Court need not look further.  *Id.*  The plaintiff, however, may also make this prima facie showing by putting forth evidence that, if proven to be true, would support jurisdiction over the defendant.  *Id.*  "[A]ny factual disputes in the parties' affidavits must be resolved in plaintiff's favor."  *Id.*

## III. ANALYSIS

In the Amended Complaint, Plaintiff alleges that the Court has subject-matter jurisdiction under "Section 39 of the Lanham Act, 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1331 and 1338 (a) and (b)."  (¶ 16.)  It also alleges the "court has subject matter jurisdiction over [its] state law claims under 28 U.S.C. § 1367."  (*Id.*)  Plaintiff

does not allege that this Court has diversity jurisdiction.  (*See id.*)

  1. <u>Whether the Federal Statutes Authorize Service of Process</u>

Prior to exercising personal jurisdiction over a defendant based on federal question jurisdiction, a district court must determine "(1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process."  *Tyrrell v. Lexidan, Inc.*, 2020 WL 996877, at *2 (D. Colo. Mar. 2, 2020) (quoting *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (internal citations and quotation marks omitted)).  If the federal statute is silent as to service of process, a district court looks to the law of forum state.  *Id.*

Though neither party addresses whether § 1338 authorizes service, (*see generally* ECF Nos. 17, 21, 22), the undersigned has previously observed that § 1338 is "silent as to service of process."  *AMBI Distribution Corp. v. Doe*, 2021 WL 3269234, at *3 (D. Colo. July 28, 2021).  Therefore, "the Court must analyze the application of personal jurisdiction under both Colorado's long-arm statute and the Constitution."  *Id.*

  2. <u>Colorado Long-Arm Statute</u>

The Colorado long-arm statute, Colorado Revised Statutes § 13-1-124, has been construed to extend jurisdiction to the full extent permitted by the Constitution, so the jurisdictional analysis in this case reduces to a single inquiry of whether jurisdiction offends due process.  *See Job Store*, 2016 WL 9735786, at *2 (citing *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1276 (10th Cir. 2005); *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005)); *see also Tyrell*, 2020 WL 996877, at *3 (noting that there is no need for a long-arm statutory analysis separate from the due process inquiry required by *International Shoe Co. v. State of Washington*, 326 U.S. 310

(1945) and its progeny). Personal jurisdiction comports with due process where a defendant has minimum contacts with the forum state and where those contacts are such that assuming jurisdiction does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316.

The specific jurisdiction analysis is two-fold. First, the Court must determine whether Defendant has such minimum contacts with Colorado that it "should reasonably anticipate being haled into court" here. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Within this inquiry, the Court must determine whether Defendant purposefully directed its activities at residents of the forum, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985), and whether Plaintiff's claims arise out of or results from "actions by . . . defendant . . . that create a substantial connection with the forum State," *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 109 (1987) (internal quotations omitted). Second, if Defendant's actions create sufficient minimum contacts, the Court must consider whether the exercise of personal jurisdiction over Defendant offends "traditional notions of fair play and substantial justice." *Job Store*, 2016 WL 9735786, at *5 (citation omitted). This latter inquiry requires a determination of whether the Court's exercise of personal jurisdiction over Defendant is "reasonable" in light of the circumstances of the case. *Id.* In determining whether a court's exercise of personal jurisdiction is reasonable, the Tenth Circuit directs a court to look to the following factors:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.

4

*Trujillo*, 465 F.3d at 1221 (citation omitted). "[T]he weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Id.*

      a.    *Minimum Contacts*

Defendant argues that it has insufficient contacts with Colorado to support personal jurisdiction over it in this forum. (ECF No. 17 at 8–12.) It argues that the majority of the contacts it has with Colorado were manufactured by Plaintiff's counsel, and therefore should not be considered. (*Id.* at 8–11.) Specifically, it identifies for the Court six different orders placed on its website for delivery to Plaintiff's counsel's business address in Denver. (¶¶ 7–8.) Though these orders were placed, they were all cancelled by Defendant, and no ordered products were shipped as a result. (*Id.*) Plaintiff readily admits to these purchases, claiming it had "proper motivations to investigate Defendant's conduct." (ECF No. 21 at 11.)

Whatever Plaintiff and its counsel's motivations may have been, "courts have disregarded transactions orchestrated by the plaintiff or counsel for the purpose of creating a contact in a state where no regular sales have [occurred]." *RE/MAX, LLC v. Shenzhen Remax Co.*, 2019 WL 1081039, at *3 (D. Colo. Jan. 18, 2019) (quoting *Boppy Co. v. Luvee Prod. Corp.*, 2004 WL 2608265, at *5 (D. Colo. May 25, 2004), *report and recommendation adopted by* 2019 WL 1437620 (D. Colo. February 27, 2019); *accord Capitol Fed. Sav. Bank v. E. Bank Corp.*, 415 F. Supp. 2d 1150, 1161–62 (D. Kan. 2007). Plaintiff cites *PopSockets LLC v. Online King LLC*, 2019 WL 7168661, at *4 (D. Colo. Dec. 23, 2019)), for the proposition that "even if Plaintiff made every single Colorado purchase from Defendant, Defendant "still voluntarily and knowingly

5

made these sales to a Colorado resident, thus purposely directing their activity to Colorado" and such sales "cannot be said to be the result of [Plaintiff's] unilateral actions."  (ECF No. 21 at 11.)  *PopSockets* in turn cites *Otter Products, LLC v. Big Birds, LLC*, No. 19-0626, ECF No. 39, at *3 (D. Colo. Aug. 9, 2019) [hereinafter *Otter I*], which relied on *Plixer International, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 8–9 (1st Cir. 2018).  These authorities make clear that what determines whether contacts created by a plaintiff or its counsel is the *intent* behind those connections.  For the purposes of this Order the Court makes no assumption whether, or not, it was Plaintiff's counsel's intent to orchestrate minimum contacts for purposes of creating personal jurisdiction over Defendant in this district.

In *Plixer*, the First Circuit explained that "[s]pecific jurisdiction . . . 'may not rest on the unilateral activity of another party or third person.'"  905 F.3d at 9 (quoting *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 208 (1st Cir. 1994)).  But it rejected a German corporation's argument that its sales to American customers were such unilateral activity.  *Id.*  It reasoned:

> Scrutinizer made a globally accessible website and U.S. customers used that website to purchase and pay for Scrutinizer's service.  Further, Scrutinizer knew that it was serving U.S. customers and took no steps to limit its website's reach or block its use by U.S. customers.  After three-and-a-half years of knowingly serving U.S. customers, Scrutinizer cannot now claim that its contact with the United States was involuntary.

*Id.* (citing *Walden v. Fiore*, 571 U.S. 277, 286 (2014)).  It noted that Justice Breyer, in his controlling concurrence in *J. MacIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 889 (2011) (Breyer, J., concurring), found a lack of personal jurisdiction because "there was no regular flow or regular course of sales."  *Plixer*, 905 F.3d at 10 (cleaned up)

6

(quoting *Nicastro*, 564 U.S. at 889 (Breyer, concurring)).  Further, the First Circuit explained that its "holding accords with Supreme Court precedent" because in *Keeton v. Hustler Magazine*, "the Supreme Court upheld the exercise of jurisdiction because the magazine publisher defendant had 'continuously and deliberately exploited the [forum] market.'"  *Id.* at 11 (quoting 465 U.S. 770, 781 (1984) (alteration in original)).

In *Otter I*, the Court explained that

> Otter sufficiently alleges that Defendants purposely directed activity in Colorado by selling products that infringe Otter's trademarks in Colorado to Colorado residents.  Otter allege[s] that Defendants "have made substantial and regular sales of infringing products bearing Plaintiffs' trademarks to Colorado," both before and after November 5, 2018, and then, in the amended complaint, specifically listed, by way of example, at least fifty such sales occurring between November 5, 2018 and February 14, 2019.  Otter additionally alleges that Defendants "continue to regularly sell[] a high volume of other infringing products bearing Plaintiffs' trademarks into Colorado and to Colorado residents."

*Otter I*, No. 19-0626, ECF No. 39, at *2 (second alteration in original).  Only then did the court cite *Plixer* to explain that even "if it was Plaintiffs themselves who made all of these purchases," "Defendants still voluntarily and knowingly made these sales to a Colorado resident, thus purposely directing their activity to Colorado; these sales cannot be said to be the result of Otter's unilateral actions."  *Id.* at *3.

Similarly, in *PopSockets*, the court explained that "Plaintiff asserts that Defendant sells a 'high volume' of products that allegedly infringe upon Plaintiff's intellectual property."  2019 WL 7168661, at *3 (quoting *Otter I*, No. 19-0626, ECF No. 39, at *2).  *Popsockets* does not appear to discuss the period of time over which the alleged infringing sales took place.  *See generally id.*

*RE/MAX*, *Boppy*, *Medinfo, Inc. v. Medtool LLC*, 2015 WL 3542712 (D. Colo. June

7

5, 2015), *Capitol*, and *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446 (3d Cir. 2003), are all factually distinguishable. In those cases, the *total* number of sales in the forum was *three or less*. *RE/MAX*, 2019 WL 1081039, at *3 (three); *Boppy*, 2004 WL 2608265, at *1 (one); *Medinfo* 2015 WL 354712, at *3 (one) (dicta); *Capitol*, 493 F. Supp. 2d at 1162 (one); *Toys "R" Us*, 318 F.3d at 454 (two).

With the reasoning of these cases in mind, the Court concludes the following: (1) minimum contacts can be established on the basis of the substantial or regular flow of sales from a non-resident company to residents of the forum state; and (2) that the sales to the plaintiff can be considered such contacts *provided* the sales are over a long enough period that the defendant "knew that it was serving [Colorado] customers and took no steps to limit its website's reach or block its use by [Colorado] customers." *Plixer*, 905 F.3d at 9. The facts of this action, as alleged in the Amended Complaint, and shown by documentary evidence submitted by Defendant with the Motion, are materially dissimilar from the cases where courts have found specific personal jurisdiction based on online sales.

The Court begins with the orders placed by Plaintiff's counsel, which are not remotely like the sales at issue in *Plixer*, *Otter I*, or *PopSockets*. On December 15, 2022, Plaintiff's counsel placed an order for one item, priced at $1,299, at 1: 34 p.m. (ECF No. 17-2 at 1.) The recipient was identified only as "JS," and the shipping address and phone number are the same as those Plaintiff's counsel Jeffrey Sturman includes in his signature block in filings submitted to this Court under Federal Rule of Civil Procedure 11. (*Compare id.*, *with* ECF No. 21 at 14–15.) At 9:54 p.m. on the same day, Defendant cancelled this order and refunded the order in full without shipping

8

anything to Colorado. (ECF No. 17-2 at 1–2.) The very next day between 4:00 and 4:19 p.m., Plaintiff's counsel placed five online orders. (ECF No. 17-3.) These orders cost $16.99, $13.99, $849.99, $52.19, and $12.99; all had the same recipient, address, and phone number as the cancelled order the previous day; and all were cancelled and refunded on December 20, 2022, between 10:30 and 10:31 a.m. This action was filed less than a month after these orders were placed, on January 13, 2023. (ECF No. 1.)

In *Plixer*, the defendant knowingly and repeatedly sold its products to citizens in the subject jurisdiction and took no steps to limit or prevent those sales for *three-and-a-half years*. 905 F.3d at 9. There are no analogous averments in the Amended Complaint. Instead, it contains the following boilerplate allegation:

> Defendant is subject to personal jurisdiction in this judicial district as Defendant has made goods bearing the SEBO Trademarks available for sale and shipping to consumers in Colorado; accepted orders for goods bearing the SEBO Trademarks for shipping to Colorado; accepted payment for goods bearing the SEBO Trademarks for shipping to Colorado; sold goods bearing the SEBO Trademarks with a shipping address of Colorado; and Plaintiff has been damaged by Defendant's tortious conduct within this judicial district.

(¶ 18.) This paragraph, "[i]n contrast to *Otter Products*[*, LLC v. Phone Rehab, LLC*, 2019 WL 4736462 (D. Colo. Sept. 27, 2019) [hereinafter *Otter II*]] and *PopSockets*, . . . does not demonstrate[ or even allege] that Defendant . . . sold and shipped a 'high volume' of allegedly infringing products to Colorado residents." *Onyx Enter. Int'l Corp. v. Sloan Int'l Holdings Corp.*, 2020 WL 1958414, at *6 (D. Colo. Mar. 26, 2020) (quoting *PopSockets*, 2019 WL 7168661, at *3). Defendant has received a total of seven orders to Colorado, six of which were from Plaintiff's counsel, and only one of which was actually shipped. (ECF No. 17-1 ¶¶ 10–13.) No matter what a "high volume" of shipped

9

orders may be, it is certainly not a single order.

Even if the Court did not discount the cancelled orders, it would conclude Defendant lacks minimum contacts with Colorado. In *Otter II*, the "Defendants made 267 sales of 341 of the Plaintiffs' products" and "1011 sales of 1226 products [total] in the State of Colorado" over the course of a year. 2019 WL 4736462, at *2. And in *Otter I*, the plaintiff specifically identified "at least fifty" sales of infringing products into Colorado over a three-month period. No. 19-0626, ECF No. 39, at *2.

*Four Winds Interactive LLC v. 22 Miles, Inc.*, 2017 WL 4334074, at *5 (D. Colo. Mar. 25, 2017) (ten), and *Leach v. Pharmadoc Inc.*, 2017 WL 943959, at *2 (W.D. Okla. Mar. 9, 2017) (four), are closer cases to the facts at issue in this action. *Leach* is especially supportive of finding personal jurisdiction over Defendant, given that the Court relied on even fewer sales, however, the Court is not persuaded. That decision contains no reference to the substantiality or regularity of the sales into the forum state; at most, it could be read to implicitly find "at least four sales, and likely more" to be "substantial." *Id.* The Court does not agree with this implicit assessment. "Substantial" is defined at "considerable in quantity" or "significantly great." Merriam-Webster Online, Substantial, https://www.merriamwebster.com/dictionary/substantial (last accessed on Mar. 4, 2024). "Regular" is defined as "recurring, attending, or functioning at fixed, uniform, or normal intervals." *Id.*, Regular, https://www.merriamwebster.com/dictionary/regular (last accessed on Mar. 4, 2024). Seven sales, one occurring in 2020 and six occurring over two days in 2023, cannot appropriately be described as "considerable in quantity," "significantly great," or "recurring" in any sense. Thus, Plaintiff's reliance on *Four Winds* and these other cases

is unavailing.  (*See* ECF No. 21 at 10.)

Having concluded that Defendant lacks minimum contacts with Colorado, the Court finds exercising personal jurisdiction over it in this jurisdiction would offend due process.  *See Nicastro,* 564 U.S. at 878 (plurality opinion) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  The Court does not unnecessarily discuss whether exercising personal jurisdiction comports with "traditional notions of fair play and substantial justice."  *Id.* at 880 (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).

## IV. CONCLUSION

For the reasons explained above, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 17) is GRANTED, and this action is DISMISSED WITHOUT PREJUDICE for lack of personal jurisdiction.  The Clerk shall terminate this action.

Dated this 6th day of March, 2024.

BY THE COURT:

William J. Martínez
Senior United States District Judge